# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF MISSOURI

| | |
|---|---|
| MONYA ORTEGA and JON EVAN JOHNSON, on behalf of themselves and all others similarly situated, <br><br> Plaintiff, <br><br> v. <br><br> WAIAKEA BOTTLING INC., WAIAKEA, INC., and SAM'S WEST, INC. d/b/a SAM'S CLUB, <br><br> Defendants. | Case No. _____ |

## CLASS ACTION COMPLAINT

Plaintiffs Monya Ortega and Jon Evan Johnson file this Class Action Complaint against Waiakea Bottling Inc.; Waiakea, Inc.; and Sam's West, Inc.:

## NATURE OF ACTION

1. This is a class action relating to injuries and damages resulting from the consumption of contaminated water produced and sold by the Waiakea Hawaiian Volcanic Water company, and distributed by Sam's Club, among others.

2. Plaintiffs and other similarly situated consumers purchased contaminated water processed by Waiakea. Since drinking the water, they have suffered injuries including sickness, nausea, and emotional distress.

## PARTIES

3. Plaintiff Monya Ortega is a resident in and is domiciled in Missouri.

4. Plaintiff Jon Evan Johnson is a resident in and is domiciled in Missouri.

5. Defendant Waiakea Bottling Inc. is a Hawaii corporation with its principal place of business in Hawaii.

1

6. Defendant Waiakea, Inc. is a Delaware corporation with its principal place of business in Hawaii. For ease of reference, the two Waiakea entities will be collectively referred to as "Waiakea."

7. Defendant Sam's West, Inc. d/b/a Sam's Club ("Sam's Club") is an Arkansas corporation with its principal place of business in Arkansas. On information and belief, Sam's Club is a wholly owned subsidiary of Wal-Mart Stores, Inc.

## JURISDICTION AND VENUE

8. Jurisdiction is proper under 28 U.S.C. § 1332 because the matter in controversy exceeds the sum of $75,000 exclusive of interest and costs and is between citizens of different states.

9. This Court has personal jurisdiction over Waiakea because it has purposely availed itself of the privilege of conducting business in this state. Among other things, Waiakea (either directly or through closely affiliated entities) markets and sells its bottled water nationally through retail outlets such as Sam's Club, among others, with the knowledge and intent that its products be sold across the country, including in Missouri. On information and belief, Waiakea has sold a significant number of bottles of water in the state of Missouri, where the injuries at issue took place. Waiakea was responsible for the shipping of these products to Missouri residents, and it purposely directed its conduct to this state.

10. This Court has personal jurisdiction over Sam's Club because it purchased shipments of Waiakea's water bottles for the purpose of selling them to customers who live in Missouri, with the actual or constructive knowledge that such products would be consumed in Missouri, where the injuries at issue took place. Sam's Club has purposely availed itself of the privileges of conducting business in Missouri, and, on information and belief, it has sold a significant number of Waiakea water bottles to customers in this state.

11. Venue is proper under 28 U.S.C. § 1391(b)(2) because a substantial part of the events giving rise to the claim occurred in this judicial district.

## GENERAL ALLEGATIONS

**A. Waiakea's Unsafe and Unsanitary Water Processing**

12. Waiakea markets itself as "Hawaiian Volcanic Water." On its website, it boasts that "Waiakea offers purity in its ultimate form."

13. Waiakea water is sold throughout the country, including in Missouri, through retail outlets such as Sam's Club and other stores or online vendors. Its website lists the following vendors: Whole Foods, Walmart, Wawa, QuickTrip, Stop & Shop, The Fresh Market, Sheetz, Speedway, Foodland, Sam's Club, Ralphs, Kroger, 7Eleven, and Sprouts.

14. Sometime in or about 2023 and 2024, Waiakea received customer complaints about floating particles found in some of its water bottles. The United States Food and Drug Administration ("FDA") was also informed and began investigating these complaints.

15. On or about November 28, 2023, Waiakea recalled several shipments of its water, representing approximately 3,850 cases. The affected lot numbers subject to the recall were WB123275 and WB123276.

16. Waiakea posted a notice of "voluntary recall" on its website dated May 1, 2024.

17. On information and belief, these were not the only shipments of Waiakea water that were subject to unsafe and unsanitary bottling conditions.

18. The FDA conducted an investigation of Waiakea's bottled water manufacturing facility from December 19, 2023 through February 14, 2024.

19. On August 13, 2024, the FDA issued a warning letter to Waiakea, noting several violations of federal law in the processing of Waiakea's water. The letter stated that Waiakea's bottled water products "have been prepared, packed, or held under insanitary conditions whereby

they may have become contaminated with filth, or whereby they may have been rendered injurious to health."

20. The letter also noted that testing of Waiakea's water in a third-party laboratory analysis found multiple kinds of bacteria and mold present, including:

- Heterotrophic plate count (HPC) over 5700 CFU/mL, which is more than ten times the recommended limit;
- Pseudomonas aruginosa;
- Paecilomyces lilacinus;
- Mycosphaerella heimii;
- Penicillium corylophilum;
- Remotididymella destructive;
- Aspergillus versicolor;
- Dioszegia species;
- Cladosporium halotolerans;
- Penicillium simplissimum; and
- Pyrenochaetopisis indica.

21. The letter concludes that Waiakea violated federal law by failing to use appropriate processes and controls for bottling its water in a safe and healthy manner and failing to use appropriate preventive controls associated with these hazards. *See* 21 C.F.R. §§ 129.80(a), 117.135(c)(1)(i).

22. The letter also notes that it "is not intended to be an all-inclusive list of violations at your facility or in connection with your products." It directs that Waiakea is responsible for investigating and determining the causes of any violations and preventing their recurrence or the

occurrence of other violations. Failure to comply with "all requirements of federal law, including FDA regulations," the letter warns, "may result in legal action without further notice."

### B. Monya Ortega and Jon Evan Johnson

23. Plaintiff Jon Evan Johnson made multiple purchases of Waiakea water through Sam's Club in 2023 and 2024. At various times during this period, he became sick and nauseated after drinking the water, including stomach pain and diarrhea. His sickness made him dehydrated, which in turn led him to drink more Waiakea water. He did not initially realize what was causing his sickness, thinking that perhaps he had food poisoning.

24. Both Plaintiffs at times shared drinking water from the same purchase order.

25. On February 5, 2024, Plaintiff Monya Ortega began drinking some Waiakea water and within approximately 30 minutes, she started to feel ill. She woke up in the middle of the night feeling sick, and the next morning she experienced serious diarrhea and stomach cramps.

26. Without realizing that the water was contaminated, Ms. Ortega continued to drink her Waiakea water because the diarrhea was making her dehydrated. Later that morning, February 6, she noticed a dark, discolored "blob" floating and moving in one of her unopened bottles of Waiakea water. She examined her other bottles and noticed at least one other unopened bottle with a visible discoloration of floating material.

27. Ms. Ortega continued to experience stomach pain, diarrhea, and nausea through that day and had to take time off work due to her sickness.

28. On February 7, Ms. Ortega visited her primary care physician, who upon seeing her condition and the nature of the water bottles, quickly sent Ms. Ortega to the emergency room. The ER staff had difficulty giving Ms. Ortega an IV due to her extreme dehydration, and she remained in the hospital for several hours.

29. Ms. Ortega notified Waiakea about her complaints concerning the water. Waiakea attempted to downplay the seriousness of her concerns. To this day, both Plaintiffs experience a phobia related to drinking bottled water, and they inspect their water bottles thoroughly before drinking.

30. Together, Ms. Ortega and Mr. Johnson have incurred thousands of dollars in medical expenses, as well as anxiety and emotional distress, including fear of future illness or medical harm, as a result of their ingestion of contaminated water.

### C. Class Allegations

31. Plaintiffs bring this action on behalf of themselves and other Missouri consumers similarly entitled to relief.

32. The Class here consists of:

    a. For Counts I and IV, all Missouri residents who consumed Waiakea's contaminated water in 2023 or 2024.

    b. For Counts II and III, all Missouri residents who purchased or otherwise received Waiakea water from Sam's Club and drank Waiakea's contaminated water in 2023 or 2024.

33. Class members are seeking damages from the Defendants for personal injury, financial loss, emotional distress, and other harm caused by drinking the contaminated water.

34. The proposed Class is so numerous that joinder of all members is impracticable. *See* Fed. R. Civ. P. 23(a)(1). The exact number of Class members is unknown at this time and can be ascertained only through appropriate discovery, but Plaintiffs believe there are likely hundreds of Class members. Based on the size of the putative Class and the nature of the injuries at issue, including the likelihood of long-term health effects from the contaminants in the water, the amount in controversy exceeds $5,000,000 for the Class.

35. Common questions of law and fact exist with respect to the Class. *See* Fed. R. Civ. P. 23(a)(2). Those questions include:

a. Whether Defendants owed a duty to consumers in Missouri to source, process, store, maintain, bottle, and distribute their water products in a safe and healthy manner free from the contaminants found in the water at issue;

b. Whether the water shipments at issue contained an unreasonable amount of contaminants and pollutants, including but not limited to the bacteria and mold identified in the FDA's warning letter and to be further established through discovery;

c. Whether the contaminants found in the water at issue can cause adverse health consequences;

d. Whether reasonable consumers would purchase Waiakea's water based on Waiakea's marketing and representations concerning its purity, sanitariness, and healthiness;

e. Whether Defendants breached their implied warranties of merchantability or fitness for a particular purpose by processing, bottling, and shipping water with the contaminants noted above and further established through discovery; and

f. Whether Sam's Club continued to sell Waiakea water after a recall had been issued arising from the discovery of contamination.

36. Plaintiffs' claims are typical of the claims of the other members of the Class. The members of the Class are all Missouri residents who drank Waiakea's contaminated water and suffered physical and/or emotional effects from the consumption of the contaminated water. For

purposes of the sub-Class pertaining to Counts II and III, the Class members all purchased or obtained their Waiakea water at issue through Sam's Club and are entitled to relief for their injuries from either or both of Waiakea or Sam's Club.

37. Plaintiffs will fairly and adequately protect the interests of all Class members. *See* Fed. R. Civ. P. 23(a)(4). Plaintiffs' counsel is competent and experienced in litigating complex cases involving class actions and in litigating statutory and common law rights. Plaintiffs have no interests adverse or antagonistic to the Class.

38. The Class is certifiable under Federal Rule of Civil Procedure 23(b)(3). The common questions of law and fact listed above predominate over any questions affecting only individual members of the Class. All Class members have a statutory and common law expectation that the water they purchase and consume meets certain minimum safety and health standards and will not pose a health risk based on contaminants of the kind found to be present in Waiakea's water. Treatment of this case as a class action will permit a large number of similarly situated persons to adjudicate their common claims in a single forum simultaneously, efficiently, and without the duplication of effort and expense that numerous individual actions would engender. Class treatment will also permit the adjudication of claims by many Class members who otherwise could not bear the expense and burden of seeking redress on an individual basis for the conduct alleged herein.

39. The interests of members of the Class in individually controlling the prosecution of separate actions is theoretical rather than practical. The Class has a strong and pervasive community of interest, and prosecution of the action through representatives would be unobjectionable. No difficulty is anticipated in the management of this action as a class action.

## COUNT I – Missouri Merchandising Practices Act

### (against both Waiakea Defendants)

40. Plaintiffs hereby incorporate the preceding and succeeding paragraphs as if they are fully set forth herein.

41. Waiakea markets its "volcanic water" as being "pure," safe, healthy, sanitary, and appropriate for public consumption.

42. Plaintiffs ordered water from Waiakea that was materially different than what had been promised, and substantially lower in quality and health standards.

43. Waiakea's marketing and assurances concerning the quality and safety of its products would lead a reasonable consumer to purchase such water.

44. Plaintiffs acted as reasonable consumers would in purchasing Waiakea's water.

45. Plaintiffs purchased Waiakea's water, a consumer good, for family or household purposes; namely, for personal consumption.

46. Plaintiffs had no foreknowledge of the contamination present in Waiakea's water before consuming it and suffering adverse consequences.

47. As a direct and proximate result of Waiakea's deception, omission, and unfair business practices, Plaintiffs suffered injury and damages exceeding $75,000 including pain, suffering, emotional distress, anxiety, financial expenses, and other damages not specifically enumerated herein.

WHEREFORE, Plaintiffs respectfully request that the Court enter judgment in their favor and against the Defendants on Count I in an amount that is fair and reasonable; for the costs of this action; for pre- and post-judgment interest; for punitive damages; for reasonable attorneys' and experts' fees; and for such other and additional relief as the Court deems just and proper.

## COUNT II – Negligence

### (against all Defendants)

48. Plaintiffs hereby incorporate the preceding and succeeding paragraphs as if they are fully set forth herein.

49. Defendants owed Plaintiffs and the putative class members a duty of reasonable care in the preparation, sourcing, processing, bottling, and distribution of Waiakea's water for public consumption.

50. Waiakea in particular is subject to numerous federal and state regulations regarding health and safety standards for its bottled water.

51. Plaintiffs are in the class of persons for whose benefit those regulations are intended, and they are direct customers of the Defendants.

52. Defendant Waiakea breached its duty of care in multiple ways, including but not limited to:

   a. Failing to maintain a safe and clean environment for the processing and bottling of water;

   b. Failing to recognize the water contamination in a timely manner;

   c. Failing to take necessary steps to protect its customers;

   d. Failing to implement appropriate policies and procedures to ensure the safety of its water products;

   e. Failing to adequately supervise its employees; and

   f. Failing to respond appropriately to regulatory warnings designed to protect the health and safety of its customers.

53. Defendant Sam's Club violated its duties to Plaintiffs by continuing to sell contaminated Waiakea water after the recall arising from the contamination.

54. As a result of Defendants' breaches of their duty of care, Plaintiffs suffered injury and damages including pain, suffering, emotional distress, anxiety, financial expense, and other damages not specifically enumerated herein.

WHEREFORE, Plaintiffs respectfully request that the Court enter judgment in their favor and against the Defendants on Count II in an amount that is fair and reasonable; for the costs of this action; for pre- and post-judgment interest; for reasonable attorneys' and experts' fees; and for such other and additional relief as the Court deems just and proper.

## COUNT III – Strict Liability

### (against all Defendants)

55. Plaintiffs hereby incorporate the preceding and succeeding paragraphs as if they are fully set forth herein.

56. Defendants are engaged in the business of selling products for use or consumption under Section 402A of the Restatement (Second) of Torts, adopted by Missouri in Mo. Ann Stat §§ 537.760 to 537.765.

57. Missouri law imposes strict liability for harm caused by selling a product in a defective, unreasonably dangerous condition.

58. The water products sold to Plaintiffs were contaminated, unsanitary, unsafe, defective, and unreasonably dangerous due to contamination at the time they left the control of Waiakea.

59. As a result of Waiakea's contaminated, defective products, Plaintiffs suffered injury and damages exceeding $75,000 including pain, suffering, emotional distress, financial expense, and other damages not specifically enumerated herein.

WHEREFORE, Plaintiffs respectfully request that the Court enter judgment in their favor and against the Defendants on Count III in an amount that is fair and reasonable; for the costs of

this action; for pre- and post-judgment interest; for reasonable attorneys' and experts' fees; and for such other and additional relief as the Court deems just and proper.

## COUNT IV – Breach of Implied Warranty

### (against both Waiakea Defendants)

60. Plaintiffs hereby incorporate the preceding and succeeding paragraphs as if they are fully set forth herein.

61. Mo. Ann Stat § 400.2-314 governs the implied warranty of merchantability in the state of Missouri. Section 400.2-315 governs the implied warranty of fitness for a particular purpose in the state of Missouri.

62. Defendant Waiakea was obligated to provide Plaintiffs with water that was of merchantable quality, was reasonably fit for the purpose for which it was sold, and conformed to the standards of the trade.

63. Waiakea knew at the time of sale that its water products were to be consumed, and Plaintiffs relied on Waiakea's judgment to furnish safe and suitable goods.

64. Waiakea impliedly warranted that its water was of merchantable quality and safe and fit for consumption.

65. Waiakea breached its implied warranties because its water products were not of merchantable quality or fit for their ordinary purpose at the time of sale. The products were contaminated and unsafe.

66. Defendants' breaches of implied warranties were a direct and proximate cause of Plaintiffs' damages.

67. Plaintiffs reasonably notified Waiakea of its breaches prior to bringing this claim.

68. As a result of Defendants' breaches of implied warranties, Plaintiffs suffered injury and damages exceeding $75,000 including pain, suffering, emotional distress, anxiety, financial expenses, and other damages not specifically enumerated herein.

WHEREFORE, Plaintiffs respectfully request that the Court enter judgment in their favor and against the Defendants on Count IV in an amount that is fair and reasonable; for the costs of this action; for pre-and post-judgment interest; for reasonable attorneys' and experts' fees; and for such other and additional relief as the Court deems just and proper.

## DEMAND FOR JURY TRIAL

Plaintiffs hereby demand a trial by jury on all issues so triable.

Respectfully submitted,

GM LAW PC

/s/ *David B. Helms*
David B. Helms  #48941
GM Law PC
8000 Maryland Avenue, Suite 1060
St. Louis, MO 63105
(314) 474-1750
davidh@gmlawpc.com

Benjamin D. Mooneyham  #65341
GM Law PC
1201 Walnut, Suite 2000
Kansas City, MO 64106
(816) 471-7700
benm@gmlawpc.com

*Attorneys for Plaintiffs*